IN THE SUPREME COURT OF NORTH CAROLINA

No. 172PA22

Filed 28 April 2023

IN THE MATTER OF: S.R.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 283 N.C. App. 149 (2022), affirming an order entered on 8 June 2021 by Judge Caroline S. Burnette in District Court, Granville County. Heard in the Supreme Court on 1 February 2023.

*Edward Eldred for petitioner-appellant.*

*Wendy C. Sotolongo, Parent Defender, and Jacky L. Brammer, Assistant Parent Defender, for respondent-appellee father.*

EARLS, Justice.

This case involves a petition to terminate parental rights in a private setting with no Department of Social Services involvement. Cases involving divorce and the breakdown of marital relationships are often contentious, and each party may have their own version of what has transpired. In cases involving children and the termination of parental rights, both parents have a "fundamental liberty interest . . . in the care, custody, and management of their child," and this interest "does not evaporate simply because they have not been model parents." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). To protect this vital interest and others, our legal system operates under a set of procedures, one of which dictates that the trial court is the

finder of fact. *In re N.W.*, 381 N.C. 851, 857 (2022) ("[T]he trial court . . . [has the] responsibility for evaluating the credibility of the witnesses, weighing the evidence, and determining the relevant facts." (citing *In re R.D.*, 376 N.C. 244, 258 (2020))). In contrast, this Court is not a fact-finding court. *See id.*

In the context of termination of parental rights proceedings, the proper inquiry is often fact-dependent and the trial court, as a fact-finding court, is in the best position to determine the credibility of the witnesses before it and make findings of fact. *See id.* With this in mind, this opinion underscores the importance of following these procedures and the correct standard of review by applying the law only to those findings of fact made by the trial court. In doing so, we affirm the Court of Appeals' decision regarding the denial of the petition to terminate Mr. Savard's parental rights but modify its decision to clarify the correct standard of review at both the adjudication and the dispositional stage.

## I.   Factual Background

The petitioner, Tiffany Roberto, and the respondent, Bruce Savard, were previously married. On 23 April 2014, their only child, Sarah,[1] was born. The day before Sarah was born, Mr. Savard experienced a mental health related incident and threatened to kill himself. Ms. Roberto contacted her current husband, Joe Roberto, who successfully retrieved the gun from Mr. Savard. In June 2014, Ms. Roberto sought and received an ex parte domestic violence protective order against Mr.

---

[1] This is a pseudonym used to protect the identity of the minor child.

Savard, in part based on this incident. The couple then separated, and Mr. Savard, who was an active-duty member of the United States Marine Corps, continued living on the military base. Ms. Roberto went to live with Mr. Roberto.

Ms. Roberto and Mr. Savard's divorce decree was entered on 8 June 2016. Despite Ms. Roberto knowing Mr. Savard's telephone number and home address, Mr. Savard was served with notice of the complaint for divorce by publication and only learned of the divorce eight days later, on 16 June 2016, through a text message from Ms. Roberto. That same day, and in the same text message, Mr. Savard also learned that as part of the divorce proceedings, Ms. Roberto was granted "the sole and exclusive care, custody, and control" of Sarah.

Ms. Roberto and Mr. Roberto were married on 22 November 2016. Mr. Savard paid child support for Sarah, which was withheld from his paycheck and mailed to North Carolina Centralized Collections. Ms. Roberto sought legal advice about terminating Mr. Savard's parental rights and was counseled to stop the garnishment of his wages through North Carolina Centralized Collections, such that Mr. Savard would be personally responsible for payment and nonpayment could be used as a ground to terminate his parental rights.

Toward the end of 2018, Ms. Roberto "closed [Mr. Savard's] support case" but "Mr. Savard was under the impression that he was no longer required to pay child support as Ms. Roberto never informed him that he as [sic] not make payments directly to her after his child support case was closed." Thus, once child support

payments were no longer collected through the garnishment of his wages, the child support payments stopped. As a result, Mr. Savard accumulated past-due child support obligations. Ms. Roberto asked Mr. Savard to relinquish his parental rights to Sarah in exchange for her forgiving his child support debt, but he declined this request.

In its order denying the petition to terminate Mr. Savard's parental rights, the trial court found that Mr. Savard made an effort to have a relationship with Sarah. It also found that he attempted to exercise his supervised visitation rights with Sarah and sent Ms. Roberto text messages asking about Sarah. However, Ms. Roberto ultimately blocked Mr. Savard's telephone number, and he was no longer able to contact her by phone. Ms. Roberto also blocked Mr. Savard from contacting her on social media. This left Mr. Savard with no reliable way to contact Sarah or her mother. The trial court further found that "Mr. Savard regularly checks Facebook for pictures of [Sarah]. He prints them out and keeps them in an album. While he has been blocked from Facebook by most of Ms. Roberto's family, he still finds a way to find those pictures."

The trial court also found that Mr. Savard had reached out to Ms. Roberto about adding Sarah to his "insurance," but Ms. Roberto never responded. Taking this information together, the trial court concluded that Ms. Roberto knew how to contact "Mr. Savard when it benefited [sic] her but ignored him at all other times" and this "benefitted her agenda which was to terminate [Mr. Savard's] parental rights."

On 25 July 2019, Ms. Roberto had Sarah's last name legally changed from Savard to Roberto. No service was effectuated on Mr. Savard, and "[h]e had no clue his child's name had been changed and had absolutely no notice of the proceedings." At the time of the trial court's 8 June 2021 order, Sarah was seven years old and had "no clue that Mr. Savard [wa]s her father." Ultimately, the trial court found that Mr. Roberto and Ms. Roberto had planned to terminate Mr. Savard's parental rights since at least 2018 and Ms. Roberto had "actively hindered and . . . precluded Mr. Savard from being part of [Sarah's] life."

On 22 June 2020, Ms. Roberto filed a petition to terminate Mr. Savard's parental rights. She alleged that grounds for termination existed under N.C.G.S. §§ 7B-1111(a)(1), (4), and (7) for neglect, failure to pay child support, and willful abandonment of Sarah. On 10 September 2020, Mr. Savard filed his answer. The case was heard in the trial court on 28 January 2021 and 18 March 2021. The trial court entered its order on 8 June 2021, denying Ms. Roberto's petition and concluding that Ms. Roberto had failed to establish grounds to terminate Mr. Savard's parental rights. The trial court concluded that Sarah was not neglected, nor had Mr. Savard "*willfully failed without justification*," to pay child support for Sarah or "*willfully*" abandoned Sarah. Ms. Roberto appealed, and the Court of Appeals unanimously affirmed the trial court's order. *In re S.R.*, 283 N.C. App. 149 (2022). Now, we affirm the Court of Appeals' decision regarding the denial of the petition to terminate Mr. Savard's parental rights but modify its decision to clarify the correct standard of

review at both the adjudication and the dispositional stage.

## II.  Standard of Review

There are two stages involved in a termination of parental rights proceeding. *In re Q.P.W.*, 376 N.C. 738, 741 (2021). These are the adjudication stage and the dispositional stage. *Id.* A different standard of review applies to each stage. *Id.* "At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247 (1997). If "[a] trial court's finding of fact . . . is supported by clear, cogent, and convincing evidence[, it will be] deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). We review whether the findings of fact support the conclusions of law, and conclusions of law are reviewed de novo. *In re K.N.*, 381 N.C. 823, 827 (2022) (citing *In re S.C.L.R.*, 378 N.C. 484, 489 (2021)).

At the dispositional stage, the trial court's assessment of the best interests of the child is reviewed for abuse of discretion. *In re C.B.*, 375 N.C. 556, 560 (2020). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (alteration in original) (quoting *In re T.L.H.*, 368 N.C. 101, 107 (2015)). "We review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *Id.* (quoting *In re J.J.B.*, 374 N.C. 787, 793 (2020)), mindful that N.C.G.S. § 7B-1110 provides that at the disposition stage "[t]he court may

consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile." N.C.G.S. § 7B-1110(a).

Moreover, as is always true, a mistake of law is an abuse of discretion. *State v. Rhodes*, 366 N.C. 532, 536 (2013) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996) ("[An abuse of discretion] standard does not mean a mistake of law is beyond appellate correction. A [trial] court by definition abuses its discretion when it makes an error of law." (citation omitted)). At the dispositional stage, as with the adjudication stage, the trial court's conclusions of law are reviewable de novo on appeal. *In re Q.P.W.*, 376 N.C. at 741. Because the present case did not proceed past the adjudication stage, the proper standard of review in this case first requires this Court to assess whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence even if the record contains evidence that would support a contrary finding. *In re B.O.A.*, 372 N.C. at 379.

### III.    The Child Support Order

A trial court may terminate parental rights if

> [o]ne parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by the decree or custody agreement.

N.C.G.S. § 7B-1111(a)(4) (2021). In *In re C.L.H.*, this Court explained that the party

petitioning for termination of parental rights under N.C.G.S. § 7B-1111(a)(4) must show "the existence of a support order that was enforceable during the year before the termination petition was filed." 376 N.C. 614, 620 (2021) (quoting *In re I.R.L.*, 263 N.C. App. 481, 485 (2019)). There, this Court concluded that because the trial court had not made any "findings of fact that a child support order existed in the year prior to the filing of the petition to terminate respondent's parental rights," those factual findings could not support termination pursuant to N.C.G.S. § 7B-1111(a)(4). *Id.* at 621.

Ms. Roberto argues that, although "not explicit, it is apparent" the trial court and the Court of Appeals accepted that the child support order existed and was enforceable. Ms. Roberto also argues that Mr. Savard also accepted this as true, stating in his brief to the Court of Appeals that "[a]n [o]rder establishing Mr. Savard's child support obligation was entered on 24 November 2014." Ms. Roberto states that because of this admission and implicit acceptance of a child support order existing and being enforceable, the trial court and Court of Appeals both erred in concluding Mr. Savard's parental rights could not be terminated.

However, the Court of Appeals found that although there was evidence in the record to support termination of parental rights pursuant to N.C.G.S. § 7B-1111(a)(4), the trial court did not make any findings of fact to this effect. *In re S.R.*, 283 N.C. App. at 159–60. In doing so, the Court of Appeals analogized the present case to *In re C.L.H.*, determining that a trial court must make findings of fact as to whether a

support order exists. *Id*. at 159. In *In re C.L.H.*, this Court concluded that when "the trial court fails to make findings of fact indicating that a child support order existed or that the parent failed to pay support as required by the child support order, its findings are insufficient to support the conclusion that grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(4)." *In re C.L.H.*, 376 N.C. at 620 (cleaned up). Here, the trial court only made findings that Mr. Savard paid child support and that his child support payments stopped after Ms. Roberto elected to stop garnishment of his wages through North Carolina Centralized Collections. However, the trial court did not make a finding that an order existed requiring Mr. Savard to pay child support.

Ms. Roberto urges this Court to apply *In re Faircloth*, which states that "by failing to deny . . . certain allegations contained in the petition, [the respondent], in fact, admitted" those allegations. 153 N.C. App. 565, 576 (2002). However, not only is this case not binding on this Court, but here Ms. Roberto had the burden of proof and cannot satisfy that burden simply by alleging unproven assertions that are not directly denied. *See In re K.S.D-F.*, 375 N.C. 626, 632 (2020) ("At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." (quoting *In re A.U.D.*, 373 N.C. 3, 5–6 (2019))). Accordingly, the conclusion of the trial court and the Court of Appeals that no grounds to terminate Mr. Savard's parental rights existed under N.C.G.S. § 7B-1111(a)(4) was

correct. *See In re C.L.H.*, 376 N.C. at 620.

Furthermore, N.C.G.S. § 7B-1111(a)(4) requires that "for a period of one year or more next preceding the filing of the petition or motion" a parent act "willfully" and "without justification [in failing] to pay for the care, support, and education of the juvenile, as required by the decree or custody agreement." N.C.G.S. § 7B-1111(a)(4). To this effect, the trial court found that in the "one year or more next preceding the filing of the petition," Mr. Savard had not *"willfully failed without justification* to pay for [Sarah's] care, support and education . . . as required by decree or custody agreement." Thus, the trial court properly concluded that Mr. Savard's parental rights should not be terminated pursuant to N.C.G.S. § 7B-1111(a)(4).

Because we find that the trial court made no findings of fact related to the existence of a child support order or the willfulness of the respondent's failure to pay during the relevant period of time, we affirm that grounds were not established to terminate Mr. Savard's parental rights under N.C.G.S. § 7B-1111(a)(4).

Subsection 7B-1111(a) provides that "[t]he court *may* terminate the parental rights" if it finds "one or more" of the grounds enumerated in the statute. N.C.G.S. § 7B-1111(a) (2021) (emphasis added). Here, while the trial court found that Mr. Savard had stopped making child support payments once Ms. Roberto stopped the wage garnishment through North Carolina Centralized Collections, it also found that Ms. Roberto never informed Mr. Savard he was required to make child support

payments directly to her.[2] Moreover, according to the trial court's findings, Ms. Roberto tried to use Mr. Savard's resulting child support debt as a bargaining chip, promising to forgive the debt if he relinquished his parental rights to Sarah.

The trial court also found that Ms. Roberto previously consulted an attorney who counseled her to stop the wage garnishment so that if Mr. Savard failed to pay child support, she could use that as a ground to seek termination of his parental rights. Importantly, in weighing the evidence before it, the trial court determined that Ms. Roberto "knew how to reach out to Mr. Savard when it benefitted her but ignored him at all other times," and this "benefit[t]ed [Ms. Roberto's] agenda which was to terminate [Mr. Savard's] parental rights." In the end, after weighing the evidence, the trial court concluded the grounds necessary to terminate Mr. Savard's parental rights were not present.

However, because this case involves the adjudication phase in a termination of parental rights proceeding, the abuse of discretion standard is not applicable. Thus, to the extent the Court of Appeals opinion could be read to be applying an abuse of discretion standard at the adjudication stage, we modify that portion of the decision and note the correct standard of appellate review at this stage is whether the findings

---

[2] Our decision should not be read as stating that a parent does not have a duty to "pay a reasonable portion of the [financial] cost of care for [their] children." *See In re S.E.*, 373 N.C. 360, 366 (2020) (explaining that a parent "cannot hide behind a cloak of ignorance to assert her failure to pay a reasonable portion of the cost of care for her children was not willful.") As we said in that case, "[t]he absence of a court order, notice, or knowledge of a requirement to pay support is not a defense to a parent's obligation to pay reasonable costs, because parents have an inherent duty to support their children." *Id.* (cleaned up).

of fact are supported by clear, cogent, and convincing evidence, and whether the findings support the conclusions of law. *In re B.O.A.*, 372 N.C. at 379.

## IV.  Neglect and Abandonment

Although the Court of Appeals did not complete an analysis of these termination grounds, it concluded that the record did not support termination on either ground. *In re S.R.*, 283 N.C. App. at 158. Our review of the record yields the same result. Under N.C.G.S. § 7B-1111(a)(1) parental rights can be terminated if the "parent has . . . neglected the juvenile . . . within the meaning of [N.C.G.S. §] 7B-101." Under the statute, a neglected juvenile is

> [a]ny juvenile less than 18 years of age (i) who is found to be a minor victim of human trafficking under G.S. 14-43.15 or (ii) whose parent, guardian, custodian, or caretaker does any of the following:
>
> a.  Does not provide proper care, supervision, or discipline.
>
> b.  Has abandoned the juvenile.
>
> c.  Has not provided or arranged for the provision of necessary medical or remedial care.
>
> d.  Or whose parent, guardian, or custodian has refused to follow the recommendations of the Juvenile and Family Team made pursuant to Article 27A of this Chapter.
>
> e.  Creates or allows to be created a living environment that is injurious to the juvenile's welfare.
>
> f.  Has participated or attempted to participate in the unlawful transfer of custody of the juvenile under G.S. 14-321.2.

g. Has placed the juvenile for care or adoption in violation of law.

In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C.G.S. § 7B-101(15) (2021). Grounds of abandonment are established where a

parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion, or the parent has voluntarily abandoned an infant pursuant to G.S. 7B-500 for at least 60 consecutive days immediately preceding the filing of the petition or motion.

N.C.G.S. § 7B-1111(a)(7). Because the Court of Appeals determined the record did not support either of these grounds it necessarily concluded the trial court's findings of fact were supported by competent evidence. *In re S.R.*, 283 N.C. App. at 158.

First, regarding termination on the ground of neglect, Ms. Roberto asserts that parental rights can be terminated for neglect if a parent neglects their child by abandonment, citing *In re K.C.T.*, 375 N.C. 592, 599–600 (2020). The relevant period for determining neglect by abandonment "is not limited to the six consecutive months immediately preceding the filing of a termination petition." *In re N.D.A.*, 373 N.C. 71, 81 (2019). In some cases "a trial court may terminate a parent's rights based on neglect that is currently occurring at the time of the termination hearing." *In re M.A.*, 378 N.C. 462, 466 (2021). "However, for other forms of neglect, the fact that 'a child has not been in the custody of the parent for a significant period of time prior to the

-13-

termination hearing' would make 'requiring the petitioner in such circumstances to show that the child is currently neglected by the parent . . . impossible.' " *Id.* (alteration in original) (quoting *In re N.D.A.*, 373 N.C. at 80). In those cases, "evidence of neglect by a parent prior to losing custody of a child . . . is admissible in subsequent proceedings to terminate parental rights," but "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* (second alteration in original) (quoting *In re Ballard*, 311 N.C. 708, 715 (1984)). If after weighing the evidence the trial court finds "a likelihood of future neglect by the parent," then it can find a neglect ground to terminate parental rights. *Id.* (quoting *In re R.L.D.*, 375 N.C. 838, 841 (2020)).

Ms. Roberto claims that the trial court impermissibly limited its review to the six months before Ms. Roberto filed the petition. However, this is incorrect as the trial court explicitly noted "[t]he history of this case is extremely relevant in the analysis of this matter," and given that the trial court's findings of fact go as far back as 2014, there is no reason to conclude that the relevant history was limited to the six months before Ms. Roberto filed her petition. Furthermore, the trial court specifically stated that it reviewed Mr. Savard's conduct outside of the six-month window to assess his credibility. *See In re C.B.C.*, 373 N.C. 16, 22 (2019) ("[T]he trial court may consider a parent's conduct outside the six-month window *in evaluating a parent's credibility and intentions . . . .*" (quoting *In re D.M.O.*, 250 N.C. App. 570, 573 (2016))).

Ms. Roberto also argues that the trial court did not ask whether Mr. Savard previously neglected Sarah or whether there was a likelihood of future neglect if Sarah was placed in Mr. Savard's care. Ms. Roberto points to Mr. Savard's prior suicidal behavior as proof that he "assaulted Ms. Roberto in Sarah's presence" and that there was a likelihood of future neglect because Mr. Savard has not adequately addressed his mental health needs. *See In re G.C.*, No. 241A22, 2023 WL 2799798, at *5 (N.C. Apr. 6, 2023) ("[T]here must be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide proper care, supervision, or discipline." (cleaned up)). But Ms. Roberto's characterization of Mr. Savard's suicidal ideation as an assault is not supported by the trial court's findings of fact. Rather, the trial court found that although Mr. Savard had threatened suicide in Ms. Roberto's presence, he was "not threatening or combative" towards her or their unborn child, Sarah. Accordingly, the Court of Appeals was correct in holding that no grounds existed to terminate Mr. Savard's parental rights under N.C.G.S. § 7B-1111(a)(1).

Second, regarding termination on the ground of willful abandonment, the determinative period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition. N.C.G.S. § 7B-1111(a)(7); *In re A.A.M.*, 379 N.C. 167, 172 (2021). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re C.B.C.*, 373 N.C. at 19 (quoting *In re Young*,

346 N.C. at 251). Willful "intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *Id.* (quoting *Pratt v. Bishop*, 257 N.C. 486, 501 (1962)). "If a parent withholds that parent's presence, . . . love, . . . care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Id.* (cleaned up).

Ms. Roberto asserts that our holding in *In re C.B.C.* is instructive in analyzing Mr. Savard's actions during the relevant six-month period from 22 December 2019 to 22 June 2020. In *In re C.B.C.*, this Court determined the parent had willfully abandoned his daughter because he did not make an effort to pursue a relationship with her. *In re C.B.C.*, 373 N.C. at 23. Specifically, the parent did not send cards or letters or contact the petitioners to ask about the child's well-being. *Id.* The parent also did not take steps to modify the custody order, resume visitation, or provide financial support for his daughter. *Id.* Although Ms. Roberto argues that Mr. Savard's actions are like that of the parent in *In re C.B.C.*, the trial court saw the evidence differently. Namely, the trial court found that "[w]hile Mr. Savard [had] not made valiant efforts to forge a relationship with his daughter, he [had] made some efforts" and these efforts were "often times . . . thwarted by Ms. Roberto." Indeed, the trial court found that "Ms. Roberto has actively hindered and essentially precluded Mr. Savard from being part of [Sarah]'s life." Perhaps most importantly, the trial court

also found that Mr. Savard had "not shown an intention to give up all parental rights to [Sarah]."

While Ms. Roberto claims that *In re C.B.C.* is instructive, that case does not contemplate a situation, such as here, where one parent actively thwarts the other parent's ability to have a relationship with their child. Furthermore, to the extent that Ms. Roberto claims that her efforts to preclude Mr. Savard from being a part of Sarah's life were justified by Mr. Savard's prior domestic violence towards her, the trial court did not make any findings of fact to support that any abuse had occurred. The trial court made no findings that Mr. Savard had sexually assaulted Ms. Roberto or that he had threatened her with a gun. Furthermore, as noted above, and as it relates to Mr. Savard's suicidal behavior, the trial court found that when Mr. Savard threatened suicide, he was not acting in a manner that was "threatening or combative" towards Ms. Roberto or their unborn child. Thus, based on the record before it, the Court of Appeals was correct to conclude that no grounds existed to terminate Mr. Savard's parental rights for willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7).

We affirm the Court of Appeals' decision and hold that there are no grounds to terminate Mr. Savard's parental rights to Sarah pursuant to N.C.G.S. § 7B-1111(a)(1), (4), or (7). We modify the decision of the Court of Appeals to the extent the Court of Appeals' decision could be read to be applying an abuse of discretion standard of review at the adjudicatory stage of this proceeding to reiterate that our review at

the adjudicatory stage is to determine whether there is clear, cogent, and convincing evidence in the record to support the trial court's findings of fact, and whether the findings of fact support the conclusions of law.

MODIFIED AND AFFIRMED.